UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DENNIS CLYDE THOMASON, #16007975,

Plaintiff,

-against-

**ORDER**
17-CV-00818(JMA)(SIL)

NASSAU COUNTY CORRECTIONAL CENTER, SHERIFF MIKE SPOZOTTO, CORPORAL DONNERRY #252, DR. P/A MERKER, LAW LIBRARY CO MICHELE CONDEL, MESS HALL CIVILIAN HEAD HAMIL,

Defendants.
-------------------------------------------------------------X
DENNIS CLYDE THOMASON, #16007975,

Plaintiff,

-against-

17-CV-01490(JMA)(SIL)

COUNTY OF NASSAU, SGT. JAMES CRAWFORD, Shield #761.4; AMBULANCE DEPARTMENT, HOSPITAL,

Defendants.
-------------------------------------------------------------X
**AZRACK, District Judge:**

On February 10, 2017, incarcerated pro se plaintiff Dennis Clyde Thomason ("plaintiff") filed an in forma pauperis complaint against the Nassau County Correctional Center ("NCCC"), Sheriff Mike Spozotto[1] ("Sheriff Sposato"), Corporal Donnerry #252 ("Cpl. Donnerry"), Dr. P/A Merker ("Dr. Merker"), Law Library CO Michele Condel ("C.O. Condel"), and Mess Hall Civilian Head Hamil ("Hamil") pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging a deprivation of his Constitutional rights ("Thomason I"). On March 10, 2017, plaintiff filed a second in forma pauperis complaint ("Thomason II") against the County of Nassau ("Nassau

[1] The Court understands that plaintiff intends to name Nassau County Sheriff Michael Sposato as a defendant.

County"), Sgt. James Crawford, Shield #761.4 ("Sgt. Crawford"), the Ambulance Department, and the Hospital, also pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging a deprivation of his Constitutional rights arising from the same set of facts alleged in Thomason I. Because the complaint in Thomason II is related to and repetitive of some of the claims alleged in Thomason I, the Court consolidates them under the first filed complaint, 17-00818(JMA)(SIL), and directs that the case assigned docket number 17-01490(JMA)(SIL) be closed. All future filings shall be made only under docket number 17-00818(JMA)(SIL).

For the reasons that follow, the Court grants plaintiff's requests to proceed in forma pauperis and sua sponte dismisses his claims in part, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).

## I. BACKGROUND[2]

Plaintiff's handwritten complaint is difficult to decipher. Plaintiff's allegations are set forth below in their entirety, to the extent that the Court can discern them. The "Statement of Claim" in Thomason I alleges:[3]

> On 12/24, 12/25, and 12/26 I was totally locked in. With no explanation by Corporal Donnerry. Without by law my hour out for shower and phone call. Then on 12/28 I was then subjected again to the same punishment for no reason. I wrote a greivance with no response. On 11/23 I was given stale bread. Again on 1/23 with mouse bites on it. From 11/23 till the present I have never been given hot food. On 11/25 I was sent to E2E6 in which my cell was freezing. I wasn't aloud to have an extra blanket. It took me over 1 ½ months of being ice cold before I found someone to move me. Once again Corporal Donnerry refused to move me. For several days I was subjected to cold showers. The air system leaks black oil in which I'm breathing and getting headaches. The showers are discusting black mold and some kind of flying nats all around. The ceiling is

[2] All material allegations in the complaint are assumed to be true for the purpose of this Order, see, e.g., Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a pro se complaint for sua sponte dismissal, a court is required to accept the material allegations in the complaint as true).

[3] Excerpts from the complaints are reproduced here exactly as they appear in the originals. Errors in spelling, punctuation, and grammar have not been corrected or noted.

> falling apart. They constantly open and close the cell doors for no reason. I'm not allowed to get a anything at a visit. It has to be sent by mail. Also the bread had stains on [indecipherable] which would be mouse urine. So I go to bed starving and wake up starving literally. I have also been packed up to go to court in another county with all the stuff allowed here. Come back and clothes, etc. be missing out of my bag. That's B.S. I had some legal mail that had to be notarized and sent with a money order. I had the money in my account. Yet Michele Condel always has a nasty attitude and slick mouth. Bugs and spiders in cells. Civilian Hamil – No badge that works and head of the mess hall. Food always cold. Trays half empty mostly all the time – I stay hungry all day. All defendants listed have had poor attitudes, spiteful, disrespectful attitudes. Only 5 phones for 52 people. I can hardly get on when I need to. Visiting – my visitors treated harshly. And finally commisary – expensive, the limits aren't listed and its all junk food. I don't need all sugar food. So I stay hungry. Also I know in the mess hall there has been fecies on food and told just wipe it off and prepare it. Very very unhealthy. And your not aloud to get magazines, books etc. sent in by your people.

(Thomason I Compl. at ¶ IV.) In the space on the form complaint that calls for a description of any claimed injuries and any medical treatment that was required and/or provided, plaintiff alleges:

> On 11/13 I was tased 3 times by an officer. Put in an ambulance in which they did nothing. Took me to the hospital. Took blood never gave me an EKG and just pulled the spike out of my chest. I would like to find someone to help sue the police and hospital and ambulance service. Since coming to the jail I have dropped 14 or more slips from 11/22 to 1/22. I finally seen the nurse Ms Montionne and another woman that wouldn't give me her name. I never saw the doctor that next day 1/23 at 7:30 p.m. I told the dorm nurse. She said I had to tell the COs in the bubble to have me called down. Its taken over 1 month to see someone. On 1/23 they never called medical and I never went down. On 1/24 finally I saw a Dr. Merker. All he did was ask me questions. A day or 2 later they took 5 vials of blood. Still no EKG test. Yes 1/27 3 days later. Since I'm dropping slips for an EKG. I've also lost 12 lbs which is a concern. I have told them as well about my high blood pressure, mygrain headaches – yet I've not been given any medicine. I most importantly have been getting sharp pains in my chest at times and shortness of breath. I have witness 2 deaths here heart related. So I'm scared and my girl is very worried.

(Id. at ¶ IV.A.) For relief, plaintiff seeks to recover a "500 million dollar settlement." (Id. at ¶ V.)

Like the allegations in Thomason I, the allegations in Thomason II are brief and disjointed. The "Statement of Claim" alleges:

> (1) Sgt. James Crawford #761.4 found me in a container on my knees. He ordered me to show my hands. I layed down with my hands out. He told me in a very irrate yelling voice with his taser and gun drawn to get up. I rose to my knee with my hands up. He then yelled irrately to stand. As I began to stand straight up with my hands in the air he shot me 3 times with his taser. Each time I repeatedly said "my heart, my heart". He didn't care. He tried to cause cardiac arrest and to kill me cause I was black. I note: Had no weapon near, on, or anywhere in my possession. This happened Nov. 13th 2016 at 7:09 am location 55 New Street Oceanside NY. (2) I was put in a ambalance which the attendant knew nothing about tased victims. (3) The hospital did not feed me from 8 – 3pm nor did they take. He also put his foot on my face while he handcuffed me. Excessive force which was not necessary at all. And I was told I should have died from that many times tased.

(Thomason II Compl. ¶ IV.) In the space on the form complaint that calls for a description of any claimed injuries and any medical treatment that was required and/or provided, plaintiff alleges:

> I have been having sharp chest pains, heart palpitations, shortness of breath, irregular heartbeats, skip beats, early and late, mental pain and suffering. And post tramatic disorder. I've had my blood taken as well as EKG. But have been told just like my mygrains. They can only tell when I am actually having the issues of pain and shortness of breath. I have since had several occurances while in jail. Long term problems can occur as time progresses the doctor said.

(Id. ¶ IV.A.) For relief, plaintiff seeks to recover "$15 millions dollars for all my symptoms. Now I fear all police due to being a black man. I don't come out my cell much . . . ." (Id. ¶ V.)

## II. DISCUSSION

### A. In Forma Pauperis Applications

Upon review of plaintiff's declarations in support of the applications to proceed in forma pauperis, the Court finds that plaintiff is qualified to commence these actions without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's applications to proceed in forma pauperis are granted.

**B. Standard of Review**

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). Similarly, pursuant to the in forma pauperis statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(b).

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the court is required to read the plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather, the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

**C. Section 1983**

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). In order to state a § 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.; see also Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010).

**1. Section 1983 Claims Against NCCC and the Ambulance Department**

Plaintiff names the NCCC and the Ambulance Department as defendants. However, these defendants are non-suable entities because they are merely administrative arms of the municipality, Nassau County. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." See Rose v. Cnty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (citing Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against the local police department because, as an "administrative arm of a municipality [, it] do[es] not have legal identity separate and apart from the municipality, and therefore, cannot sue or be sued."). Therefore, plaintiff's claims against NCCC and the Ambulance Department are implausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii), 1915A(b)(1).

**2. Section 1983 Claim Against Nassau County**

It is well-established that a municipality, such as Nassau County, may be liable under Section 1983 only if the "plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); see also Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation of the plaintiff's rights. See Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the

existence of a formal policy officially endorsed by the municipality, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the municipal employees. Davis, 224 F. Supp. 2d at 478; Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted). "[A] single incident in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted).

Here, even affording the pro se complaint a liberal construction, there are simply no allegations from which the Court may reasonably infer that the conduct or inaction of which plaintiff complains was caused by some policy or custom of Nassau County. Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) ("[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."). Accordingly, plaintiff has not alleged a plausible Section 1983 claim against Nassau County and the complaint is thus dismissed without prejudice as against Nassau County pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).

**3. Claim Against the Hospital**

Although plaintiff does not specify which hospital he intends to sue, given the nature of the allegations in the Thomason II, it appears that plaintiff seeks to sue the medical provider to inmates at the NCCC, Armor Correctional Health Services, Inc. ("Armor"). "Armor is a private company that provides medical services for inmates at the [NCCC] pursuant to a contract with the Nassau

County Sheriff's Department . . . ." Whitenack v. Armor Medical, 13-CV-2071, 2014 WL 5502300, at *8 (E.D.N.Y. Oct. 30, 2014) (alteration in original). The Court assumes for purposes of this order that Armor was acting under color of state law in rendering medical services to plaintiff at the NCCC. See, e.g., Feder v. Sposato, 11-CV-0093, 2014 WL 1801137, at * 6 (E.D.N.Y. May 7, 2014) ("Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor . . . [was] 'acting under the color of state law' for purposes of Section 1983"). However, like Nassau County, Armor may be liable under Section 1983 only if "the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (quoting Monell, 436 U.S. at 691 (internal quotation marks omitted)); see also Green v. City of New York, 465 F.3d 65, 82 (2d Cir. 2006) (finding that a hospital was not vicariously liable for any constitutional torts that its employees may have committed). "Although Monell dealt with municipal employers, its rationale has been extended to private businesses." Rojas, 924 F.2d at 409; see also Bektic-Marrero v. Goldberg, 850 F. Supp. 2d 418, 432 (S.D.N.Y. 2012) (holding that Monell has been extended to private Section 1983 defendants acting under color of state law).

Here, plaintiff's complaints include no factual allegations from which the Court may reasonably infer that the conduct of which plaintiff complains was caused by a policy or custom of Armor. Santos, 847 F. Supp. 2d at 576 ("[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."). Plaintiff has thus failed to allege a plausible Section 1983 claim against the Hospital and such claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii), 1915A(b)(1).

**4. Claim Against Sheriff Sposato**

In order to state a plausible claim for relief under Section 1983, a plaintiff must allege the

personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); McCoy v. Goord, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (A Section 1983 claim for damages against an individual defendant must allege specific facts to show that each defendant was directly or personally involved in the alleged violation of the Constitution or laws; "that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'") (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)). "Personal involvement" may be established by evidence of a supervisor's direct participation in the challenged conduct or "by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). An "individual cannot be held liable for damages under Section 1983 merely because he held a high position of authority." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, although Sheriff Sposato is listed as a defendant in the caption of Thomason I, he is not again mentioned in the body of the complaint. Plaintiff has thus failed to allege any facts indicating that Sheriff Sposato was personally involved in any of the challenged conduct and/or inaction. In the absence of any factual allegations, Sheriff Spostao cannot be held liable simply because of his position of authority in the prison system. See, e.g., Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) ("[P]laintiff's claim for monetary damages against these defendants requires a showing of more than linkage in the prison chain of command; the doctrine

of respondeat superior does not apply."). Accordingly, plaintiff has not alleged a plausible claim for relief against Sheriff Sposato and such claim is thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii), 1915A(b)(1).

**5. Claims Against Dr. Merker, Condel, and Hamil**

Plaintiff alleges, with regard to Dr. Merker, that "[a]ll he did was ask me questions" and complains that Dr. Merker did not order plaintiff to have an EKG. (Thomason I Compl. ¶ IV.) Plaintiff claims that "Michele Condel always has a nasty attitude and slick mouth" and that "Civilian Hamil – No badge that works and head of the mess hall. Food always cold. Trays half empty mostly all the time – I stay hungry all day." (Id.) Plaintiff also claims that on November 23, 2016, he was served "stale bread" and that on January 23, 2017, he was served bread "with mouse bites on it." (Id.) Plaintiff also claims that the bread has "stains" on it which he claims is "mouse urine" and "there has been fecies on food and just told to wipe it off." (Id.) Further, plaintiff alleges that "[a]ll defendants listed have had poor attitudes, spiteful, disrespectful attitudes." (Id.)

Plaintiff appears to challenge as unconstitutional the conditions of his confinement by claiming that he was: (1) denied adequate medical care; (2) served stale bread, and cold and contaminated food; and (3) subjected to the "slick mouth" and poor attitudes of NCCC personnel. (Id.) Plaintiff does not allege whether he is a pre-trial detainee or a convicted prisoner. If plaintiff is a pre-trial detainee, his claim arises under the Due Process Clause of the Fourteenth Amendment and if he is a convicted prisoner, his claims arise under the Eighth Amendment. Darnell v. Pineiro, 849 F.3d 17, 27 (2d Cir. 2017); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). In any event, the analysis of such claims, whether under the Fourteenth Amendment or the Eighth Amendment are identical in all relevant respects. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009); Williams v. Ramos, 13 CV 826, 2013 WL 7017674 (S.D.N.Y. Dec. 23, 2013).

To state a claim for constitutionally inadequate conditions of confinement, the complaint must allege facts satisfying both objective and subjective criteria: "(i) the deprivation alleged must be, objectively, sufficiently serious; and (ii) a prison official must exhibit subjective 'deliberate indifference' to inmate health or safety." See Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Under the objective prong, only extreme deprivations - - those denying "the minimal civilized measure of life's necessities" - - suffice to state a claim. Wilson v. Seiter, 501 U.S. 294, 298 (1991); see Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999). Under the subjective prong, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

a. Medical Care Claim

The Constitution "forbids deliberate indifference to serious medical needs of prisoners." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013). To establish a claim for deliberate indifference to a serious medical need, a plaintiff must allege facts demonstrating both that, objectively, "the alleged deprivation of adequate medical care must be sufficiently serious" and also that defendants "must be subjectively reckless in their denial of medical care." Id. The Second Circuit instructs, however, that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); see also Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."). Indeed, inmates do not have a constitutional right to the treatment of

their choice. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir.1986).

Here, plaintiff alleges that he was immediately taken to the Hospital on November 13, 2013 after he was struck with a taser and was again examined by Dr. Merker on January 24, 2017 at the NCCC. (Thomason I Compl. at ¶ IV.) Although Dr. Merker allegedly asked questions and ordered blood tests, plaintiff complains that no EKG was ordered or performed. (Id.) However, plaintiff alleges in Thomason II that "I've had my blood taken as well as EKG." (Thomason II Compl. at ¶ IV.A.) Thus given that plaintiff acknowledges that he had the requested test, he can hardly claim that Dr. Merker was deliberately indifferent to medical needs. In any event, "[t]he question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107. Thus, to the extent that plaintiff disagrees with Dr. Merker's judgments respecting his treatment, the disagreement cannot ground a claim for deliberate indifference. Further, wholly absent from the complaints are any allegations from which the Court can reasonably construe subjective recklessness on the part of Dr. Merker. Accordingly, plaintiff's claims against Dr. Merker are not plausible and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

b. Claims About the Food at the NCCC

The Constitution requires prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); see also Wilson v. Seiter, 501 U.S. 294, 303 (1991) (Constitution requires that prisoners be served a nutritionally adequate diet). Here, plaintiff's claim that he was served cold food does not plausibly allege a cognizable deprivation. Huggins v. Schriro, 14-CV-6468, 2015 WL 7345750,

*7 (S.D.N.Y. Nov. 19, 2015) (recommending dismissal of Section 1983 claims alleging that food was served cold or lukewarm and citing Fisher v. Dep't of Corr., 92-CV-6037, 1995 WL 608379, at *5 (S.D.N.Y. Oct. 16, 1995) (food sometimes served cold does not rise to the level of constitutional violation)), report and recommendation adopted, 2016 WL 680822 (Feb. 18, 2016); see also Brooks v. NYC DOC Comm'r, 14-CV-6283, 2016 WL 4530456, *4-5 (E.D.N.Y. Aug. 29, 2016)(sua sponte dismissing Section 1983 claims alleging that inmates were served cold food and citing, inter alia, Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974) (concluding that prisoners' allegations concerning denial of hot meals failed to state cognizable claim of cruel and unusual punishment, given that prisoners were otherwise adequately fed); Gawloski v. Dallman, 803 F. Supp. 103, 111-12 (S.D. Ohio W.D. 1992) (holding that inmate's allegation that prison officials failed to provide hot meals "did not constitute cruel and unusual punishment absent some indication that [the inmate] received less than one meal per day or that the meals lacked nutritional value or were in some way physically harmful to [the inmate's] health"); Cruz v. Jackson, 1997 WL 45348, at *6 (S.D.N.Y. Feb. 5, 1997) (prisoner alleging he was regularly served cold food failed to allege substantial deprivation).

Similarly, being served stale bread on two isolated occasions does not rise to the level of a constitutional deprivation. See, e.g., Waring v. Meachum, 175 F. Supp. 2d 230, 239-40 (D. Conn. 2001) (finding that inadequate and cold food during weeklong lockdown did not rise to level of constitutional violation); Cagle v. Perry, 04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (holding that two meal deprivations were not sufficiently numerous, prolonged, or severe to rise to level of Eighth Amendment violation). Nor does plaintiff's claim that, on occasion, the food was contaminated state a plausible claim. "[A]s plaintiff fails to allege any defendant was aware of, but deliberately indifferent to, complaints or other evidence of food-borne illness resulting from prisoners' being served cold food [and/or stale or contaminated bread], he

also fails to plead subjective deliberate indifference." Williams v. Ramos, 13-CV-00826, 2013 WL 7017674, *6 (S.D.N.Y. Dec. 23, 2013) (citing Newman v. Zenk, 05-CV-00759, 2007 WL 6888112, at *5-6 (E.D.N.Y Mar. 29, 2007)). Thus, plaintiff's claims alleging a Constitutional deprivation concerning the food at the NCCC are not plausible and are thus dismissed without prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

c. Claims of Verbal Harassment

It is well-established that, "without any showing of physical injury or damage, claims of verbal harassment, including taunts, insults, and racial slurs cannot form the basis of a claim under Section 1983." McKethan v. Carbone, 97-CV-0061, 1998 WL 178804, *2 (N.D.N.Y Apr. 13, 1998) (citations omited); see also Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (unpublished opinion) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); Purcell v. Coughlin, 790 F.2d 263, 264-65 (2d Cir. 1986) (*per curiam*) (affirming dismissal of Section 1983 claims alleging that various prison officials called him names on one occasion).

Thus, plaintiff's claim that Condel has a "slick mouth" does not rise to the level of a Constitutional deprivation. Because this claim is implausible, it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(i).

**6. Claims Against Cpl. Donnerry and Sgt. Crawford**

Though thin, the Court declines to sua sponte dismiss plaintiff's excessive force claims against Cpl. Donnerry and Sgt. Crawford at this early stage in the proceedings. Accordingly, the Court orders that that Clerk of the Court issue summonses for Cpl. Donnerry and Sgt. Crawford and forward the summonses together with copies of the complaints and this Order to the United States Marshal Service ("USMS") for service upon these defendants forthwith.

## III. CONCLUSION

For the forgoing reasons, the plaintiff's applications to proceed in forma pauperis are

granted, but the claims against the NCCC and the Ambulance Department are sua sponte dismissed with prejudice for failure to allege a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Plaintiff's claims against Nassau County, the Hospital, Sheriff Sposato, Dr. Merker, Conel and Hamil are sua sponte dismissed without prejudice for failure to allege a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The Clerk of the Clerk shall issue summonses to Sgt. Crawford and Cpl. Donnerry and shall forward summonses and copies of the complaints and this Order to the USMS for service upon these defendants forthwith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

______/s/ (JMA)________________
Joan M. Azrack
United States District Judge

Dated: June 1, 2017
Central Islip, New York